Edward C. **LENNERTH** et al., Plaintiffs,

v.

Samuel T. **MENDENHALL** et al.,
Defendants.

Civ. A. No. C 64–220.

United States District Court
N. D. Ohio, E. D.

Aug. 5, 1964.

30. Plaintiff's Post-trial Brief, p. 12.

31. Plaintiff concedes this. See Plaintiff's Post-trial Brief, p. 12.

32. Defendant's' Brief, p. 19.

60

Myron T. Krotinger, Cleveland, Ohio, for plaintiff.

Avery Cohen, Cleveland, Ohio, and F. J. Wettrick, Seattle, Wash., for defendants.

CONNELL, Chief Judge.

Plaintiffs instituted the within action charging the several defendants with fraud and deceit in the sale of securities,. and seeking rescission of the sale. Thereafter they caused most of the named defendants to be served with process according to law. The complaint. specifically states that the action arises under the Securities Exchange Act of 1934 (15 U.S.C.A. § 78(j)). After filing the complaint, during the investigation of the case by the plaintiffs, it has supposedly come to their attention that the alleged securities which the plaintiffs bought were not the subject of an effective registration statement. If true, this would constitute a violation of the Securities Act of 1933. Consequently the plaintiffs, have moved for a summary judgment in their favor, against those defendants, properly before the Court, on the ground that there is no valid effective registration for this security. The defendants interpose two objections: First, they resist the attempt by the plaintiffs to secure judgment upon violation of the 1933 Act when the complaint is apparent-

ly grounded on the 1934 Act; Secondly, that the plaintiff has failed to show the absence of a genuine issue as to material facts.

In addressing the first objection of the defendants, let us state preliminarily that the Federal Rules have inaugurated, and have forced Courts to adopt, a most liberal policy in the procedures which bring legal disputes to issue and disposition. As we stated recently in Wirtz v. W. G. Lockhart Construction Company, 230 F.Supp. 823 (N.D.Ohio 1964): "It has always been this Court's impression that the Federal Rules of Civil Procedure were and are designed to introduce a sense of reality to the procedural aspects of lawsuits and to free litigants from the niceties of the common-law writs and the nuances of code pleading."

Perhaps the cornerstone of this enlightened procedural structure is Rule 8, which requires only that the plaintiff make a short and plain statement of complaint setting out the relief sought and a legal basis for such relief. In such a "notice" pleading jurisdiction, the plaintiff must only call to the defendant's attention that a transaction (using that term in its broadest sense) between the two is the subject of legal complaint. The defendant says here that, because the plaintiffs' complaint is bottomed upon an alleged violation of the Securities Exchange Act of 1934, they may not seek judgment upon proof of a violation of the Securities Act of 1933. We disagree. The complaint directed against this investment transaction has put the defendants on notice that that transaction is allegedly in violation of federal securities law, and this Court is empowered to grant relief if the plaintiffs have made out a prima facie violation of those laws and the defendants are unable to raise a genuine issue as to any material fact.

Professor Moore tells us that the Federal Rules have discarded the "theory of the pleadings" doctrine which the defendants would have us apply to the plaintiffs. 2 Moore's Federal Practice 1713. Mr. Justice Harlan, while sitting in the Second Circuit, held in Siegelman v. Cunard White Star, 221 F.2d 189 (2d Cir. 1955), that it was not necessary to set out the precise legal theory upon which the claim was based. As Judge Clark stated in Gins v. Mauser Plumbing Supply Company, 148 F.2d 974 (2d Cir. 1945):

"A simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover, is a measure of clarity and safety; and even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."

Thus, even without amending his pleadings, a complainant may be entitled to whatever relief the evidence indicates is proper. 2 Moore, supra, at 1718. In Dioguardi v. Durning, 139 F.2d 774, (2d Cir. 1944), in what has become known as a landmark case announcing the extent of liberality under the Rules, we again find Judge Clark sustaining an inartistically "drawn pleading" and suggesting that the time for asserting the precise theory upon which relief is to be predicated is at trial or upon motion for summary judgment. This strikes us as the proper approach.

We find numerous examples where the interest of justice has prompted courts to permit recovery upon legal theories not within the limits of the pleadings. For example, in United States v. Missouri-Kansas-Texas Railroad Company, 273 F.2d 474 (10th Cir. 1959), the government sought to recover penalties for violation of the Safety Appliance Act (45 U.S.C.A. §§ 11, 12), alleging that the defendant's cars were not equipped with "secure running boards" as required by the statute. No mention was made in the pleadings of certain regulations promulgated by the Interstate Commerce Commission; after submission of stipulated facts, the government asserted

these regulations as a basis of recovery. The District Court refused to grant judgment for the plaintiff, but the appellate court corrected this error by entering judgment for the government:

> "The trial court was apparently of the view, and it is so contended here, that the United States may not rely upon the specifications of a regulation which was not specifically pleaded. * * * We find no merit in this contention. * * * It is not necessary to plead under what particular law the recovery is sought." 273 F.2d 474, 476.

Similarly, in Nord v. McIlroy, 296 F.2d 12 (9th Cir. 1961), a debtor applying for an arrangement under Chapter XI of the Bankruptcy Act alleged ownership of certain realty in opposition to the claim of title by certain claimants. The referee recognized the debtor's assertion of title; the District Court affirmed. Before the Court of Appeals, the appellant-claimants contended that the debtor should have been required to plead that his claim to the property was based on adverse possession. The contention was dismissed.

Turning to the particular statutes invoked by the plaintiff here, we are unable to find any case where the precise issue before us has been resolved. However, in two cases involving motions to dismiss alleged violations of securities laws, we find analogous authority which leads us to the inescapable conclusion that the defendants' contention here is without merit. In Buchholtz v. Renard, 188 F.Supp. 888 (S.D.N.Y.1960), several of the counts in a complaint alleged violations of both the Securities Act of 1933 and the Securities Exchange Act of 1934; the defendant moved to dismiss or strike, contending that alleged violations of the different statutes should be contained in separate averments. Thus spoke the Court:

> "I do not think there is any merit in defendants' position nor have they cited any precedent for it. Many of the sections of these acts have little independent effect but depend on other sections for their full meaning." 188 F.Supp. 888, 890.

It appears that that Court felt, and we agree, that the two statutes are so inextricably interwoven that they must be considered together as one body of law.

In Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123 (E.D.Pa.1948), the complaint alleged that the defendants had filed a false registration statement, a violation of the 1933 Act, but referred to the Act of 1934 as the basis of the lawsuit. The Court overruled a motion to dismiss:

> "It is obvious that the cause of action arises exclusively from conduct and acts which, whether or not they violate the Securities Exchange Act of 1934 * * * unquestionably constitute violations of the Securities Act of 1933 * * *. In this aspect the complaint states a claim upon which relief can be granted and the fact that the pleader referred to another statute * * * is immaterial."

And we say here that it is immaterial that the pleader has specifically alleged violations of one Act when he predicates a motion for summary judgment upon proof of a violation of the other Act. The defendants have been afforded sufficient notice by the pleading that the transaction is suspect; the motion for summary judgment has specified the particular alleged flaw upon which the plaintiff now claims that he is entitled to relief. Many times in the investigation and discovery stage of a lawsuit a ground of recovery emerges which though related, is not precisely within the ambit of the pleadings; we think it a better practice to recognize such grounds when, as here, they are closely related to the general tone of the pleadings. The proper test should be, as it usually is under the Federal Rules, whether such liberality is fundamentally fair; if the defendant is not prejudiced by such tactics, his complaint is empty. At no time has any defendant claimed that the sudden invocation of § 5 of the Act of 1933 has operated to his prejudice. There has

been no claim of surprise or no request for an extension of time to investigate. It is really a very simple proposition: was there a registration statement in effect at the time of the alleged sale?

■ To make out a prima facie case under § 5 in order to authorize § 12 relief, the plaintiff must establish: (1) there was a sale, or offer of sale, of a security; (2) there was no registration statement in effect at that time; (3) the sale was enhanced by the use of interstate transportation or communication, or the mails.[1]

By way of evidence to assist the Court in deciding this motion and establishing the elements of the violation, the plaintiffs have offered their affidavits, copies of newspaper advertisements, a copy of an agreement to incorporate, a cancelled check and a promissory note. Since the defendants have not contradicted the plaintiffs' assertion that these are true copies, we assume that they are true. The newspaper ads served as the enticement to the plaintiffs; the other exhibits evidence the finalization of the transaction. To complete this story, we must turn to the affidavits of the plaintiffs; unfortunately, the defendants, except Roger, have neglected to tell the story, by way of affidavit, from their viewpoint.

■ We find as a matter of law that that which the defendants offered to the plaintiff was a "security" within the meaning of the statute.

Section 2[1] of the Securities Act of 1933, 15 U.S.C.A. 77b(1) defines the term "security" to include not only the commonly recognized documents traded such as stock, bonds or notes, but also others of a more variable character such as "investment contracts", "certificates of interest" or "[P]articipation in any profit-sharing agreement."

In Securities & Exchange Commission v. W. J. Howey Company, 328 U.S. 293, at page 299, 66 S.Ct. 1100, at page 1103, 90 L.Ed. 1244 (1946) the Supreme Court commented on a broad definition of the term "security" as follows:

"It embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."

In the instant case, the defendants' offering and course of business conduct falls within the statutory definition of the term "security". All of the elements of a profit sharing business venture are present. (See Exhibit "B" attached Affidavit in Support of Plaintiffs' Motion for Summary Judgment.) Accordingly, defendants are engaged in the offer and sale of a "security".

We find that there was no registration statement in effect at the time of this transaction; the assertion to that effect in the plaintiffs' sworn affidavit is uncontroverted. No defendant has come forward to dispute this issue.

We find that the requirement that an interstate communication or the mail be used is amply satisfied. Defendant Roger used the telephone to arrange the second meeting with the plaintiffs; even though the call both originated from and was received in the state of Ohio, the requirements of the statute are satisfied. It is the character of the instrument used, rather than the nature of the call, which determines. Use of the telephone is the use of a means of interstate communication. Repass v. Rees, 174 F.Supp. 898 (D.C.Colo.1959). Furthermore, the deal was finalized by the mailing of the plaintiffs' check to the defendants. This act was indispensable to the whole transaction, and serves as an additional showing of the required method of communication. Cf. United States v. Steffes, 226 F.Supp. 51 (D.C.Mont.1964).

We find as a matter of uncontroverted fact that some but not all defendants properly before the Court participated to a culpable degree in either the offer

---

1. Defendants have boldly suggested that the plaintiffs must also prove that the transaction is not one which falls within the exceptions to § 5 liability which are set out in § 4 of the Act. Every reported case is to the contrary; one who claims an exception bears the burden of establishing it.

to sell, or the sale, or both. Defendant Roger met the plaintiffs after arranging *by telephone* to meet them; he made the initial overtures which ultimately culminated in the unfortunate investment by the plaintiffs. The affidavit of the plaintiffs states that when they met with Roger, he outlined the details of the proposed venture: the defendant corporation would build a center in Cleveland and spend $12,000 for advertising; the defendants would manage the center at a salary of $750 per month plus a profit sharing arrangement; the defendants would be required to invest $24,000; that the defendant corporation would not use that money for its own operations, but it would be returned to the plaintiffs when the center was built for use in the operation of the center. Defendant Roger described the defendant corporation as a national operation, extremely successful and heavily financed. At a subsequent meeting, Roger reiterated his representations concerning the financial health of his principal, and displayed pictorial résumés purporting to show what the proposed center would look like. He analyzed costs of operations and other estimated expenses and deduced that the Cleveland operation would realize a profit of $4,000 per month. At a third meeting, Roger introduced the plaintiffs to Gerald Hegg, vice-president of the defendant corporation, and he informed the plaintiffs that they had been selected as suitable investors in the proposed center. At this point, defendant Roger drops out of the plaintiffs' story. In his affidavit, Roger does not deny, change or reinterpret any of these facts as set out in the defendants' affidavit;[2] do these facts then, taken as true, expose Roger to liability?

The courts have not been in agreement as to the liability of such agents, nor have they been explicit in explaining what few holdings we can find on this issue. Perhaps one problem is the nature of the relief sought—rescission; it would seem natural to hold only the actual party to the contract to provide such relief. On the other hand, the spirit of the Acts would be defeated if such a narrow view would be adopted. Consequently, it is now clear that a broker for the seller is a "person who sells" within the meaning of the Acts so as to expose him to liability under § 12 of the 1933 Act. Cady v. Murphy, 113 F.2d 988 (1st Cir. 1940); Wall v. Wagner, 125 F.Supp. 854, 858 (D.C.Neb.1954) affirmed sub nom. Whittaker v. Wall, 226 F.2d 868 (8th Cir. 1955). But we cannot say that Roger is a broker so as to attach liability to him on the basis of these authorities; he is nothing more than an agent for the vendor.

In the Wall case, supra, the Court there, relying on the language of Cady, held both a selling corporation and its agents liable under § 12 to a buyer of royalty interests which were not the subject of a valid registration statement. In that case, however, the agents actually closed the deal and signed the agreement on behalf of the selling corporation.[3] According to the evidence in the instant case, Roger stepped aside in the final stages of the sale and was not present at its consummation, nor did he sign the final papers.

In Wonneman v. Stratford Securities Company, Inc., CCH Fed.Sec.L.Rep. No. 91,034 (S.D.N.Y.1961), the Court fully analyzed the problem of "participation" in the sale so as to incur liability. At

2. Much of the argument which the defendant Roger seeks to make from his affidavit is of no avail because parts thereof are not in conformity with Rule 56(e) which reads in part that "affidavits shall be made on personal *knowledge*", not personal belief. That part of his affidavit where Roger states that he *believes* that the final agreement between the parties does not represent what he arranged is, therefore, entitled to no consideration. Cf. Transo Envelope Company v. Murray Envelope Company, 227 F.Supp. 240 (D.C.N.J.1964), Jameson v. Jameson, 85 U.S.App.D.C. 176, 176 F.2d 58 (D.C.Cir.1949).

3. Similarly, in MacClain v. Bules, 275 F.2d 431 (8th Cir. 1960), the Court affirmed a judgment against a salesman who purported to act as agent for the selling corporation; however, the defendant did not raise the issue which confronts us.

the outset, the Court admitted that one who negotiates a sale may be liable. However, the Court released all defendants except the corporate seller and its sole owner, who had personally closed the deal. These other defendants included (1) an attorney who did the legal work incident to reviving a dormant corporation (which with his help had been sought and purchased specifically because of his opinion that its securities could be sold under the brokerage exemption) altering its capital structure and recommending two directors and a transfer agent, but whose closest contact with the sales to the plaintiff was an oral opinion in a conversation with the controlling stockholder to the effect that the securities were exempt; (2) the issuer whose stock was illegally transferred to the plaintiff and whose officers furnished information to the selling firm which was utilized by it in offering and selling the stock to the public; (3) the secretary-treasurer of the issuer (one of the directors recommended by the attorney), who participated in changing the issuer's name, allegedly as one step in the reorganization preparatory to the public sale; (4) the controlling stockholder's wife, who was listed as an officer and director of the selling firm but was entirely passive; and (5) one Graham, the president and a director of the issuer, who furnished information to the selling firm on the issuer's condition in response to the controlling stockholder's request, but who prepared only one form letter for the stockholders, his company receiving none of the consideration because the shares sold had been bought in the open market.

But what the plaintiff attempted to do in Wonneman was to attach liability to all who participated "in any phase of the overall plan to market securities in violation of the Act". It is implicit in the Court's reasoning, when it rejects such a contention and yet states that it would hold liable one who negotiates the sale, that liability must lie somewhere between the narrow view, which holds only the parties to the sale, and the too-liberal view which would hold all who remotely participated in the events leading up to the transaction. We think that the line of demarcation must be drawn in terms of cause and effect: To borrow a phrase from the law of negligence, did the injury to the plaintiff flow directly and proximately from the actions of this particular defendant? If the answer is in the affirmative, we would hold him liable. But for the presence of the defendant Roger in the negotiations preceding the sale, could the sale have been consummated? If the answer is in the negative, and we find that the transaction could never have materialized without the efforts of that defendant, we must find him guilty.

We so find. Roger made the initial contact with the Lennerths; he represented to them the "idyllic" investment opportunity which World Wide had decided to present to them. He told them how much they would be required to invest, how it would be used, and what benefits the plaintiffs would reap. He showed them how successful their sister venture had been, and how lucrative the Lennerths' center would be. In short, he did everything but draw and sign the contract. The hunter who seduces the prey and leads it to the trap he has set is no less guilty than the hunter whose hand springs the snare. We find that the activity of the corporate defendant's agent Roger is tantamount to that of a "seller" within the liberal remedial spirit of the securities laws.

As to the defendant Hegg, the vice-president of the defendant corporation, we find from the plaintiffs' unopposed affidavit that he traveled to Cleveland on June 11, 1963, to assist defendant Roger in luring the plaintiffs into parting with their money. It was he who announced the decision that World Wide was satisfied with the plaintiffs' credentials; it was he who persuaded the plaintiffs to travel to Seattle, Washington in order that the deal might be closed. It was he who represented the symbol of authority which Roger said he lacked. We find, therefore, that defendant Hegg's

**66**

participation was indispensable to the final outcome.

As to defendant Mendenhall, the president of the defendant corporation, his act of signing the agreement operates to expose him to liability.

The statements in the affidavits of the plaintiffs by which they seek to include defendants Robbins (who has not yet been served), Choate, Herbert and Marston are insufficient to sustain a judgment against these defendants. As to these defendants, the motion is overruled.

The corporate defendant is liable as a party to the contract; the uncontroverted evidence shows that all individual defendants repeatedly stated that they were acting on behalf of World Wide Automatic Archery, Inc.

Therefore, it is ordered that judgment be entered on behalf of the plaintiffs against defendants World Wide Automatic Archery, Inc., Samuel Mendenhall, Gerald B. Hegg, and Robert S. Roger. The motion for summary judgment against the other defendants at this time is overruled.