605 F.2d 110
 56 A.L.R.Fed. 649, Fed. Sec. L. Rep. P 97,110
 COLLINS, Donald M. and Cillag, John R.
v.
SIGNETICS CORPORATION
and
Corning Glass Works.
Appeal of John R. CILLAG in No. 78-2500.
COLLINS, Donald M. and Cillag, John R.
v.
SIGNETICS CORPORATION
and
Corning Glass Works, Appellants in No. 78-2501.
CILLAG, John R., Appellant in No. 78-2502,
v.
SIGNETICS CORPORATION
and
Corning Glass Works.
CILLAG, John R.
v.
SIGNETICS CORPORATION
and
Corning Glass Works, Appellants in No. 78-2503.
 Nos. 78-2500 to 78-2503.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 8, 1979.
Decided Aug. 31, 1979.
 
 Richard K. Masterson (argued), Waters, Fleer, Cooper & Gallager, Philadelphia, Pa., for appellants.
 Henry Kolowrat (argued), Jean Wegman Burns, James E. Hipolit, Dechert Price & Rhoads, Philadelphia, Pa., for appellees.
 Before ALDISERT and WEIS, Circuit Judges, and DIAMOND, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The major question for decision is whether absence of buyer-seller privity is fatal to a claim based on § 12(2) of the Securities Act of 1933.[1] The district courts in this circuit that have addressed the question, including Judge McGlynn, the trial judge here, have ruled that unless some special relationship exists between the issuer and the actual seller of the securities, such as control of the seller by the issuer, a purchaser not in privity with the issuer has no claim under § 12(2) against the issuer.[2] We agree with this interpretation and, persuaded that the trial court committed no error in dismissing appellants' § 12(2) claim or in ruling on appellants' other contentions, we affirm.
 
 
 2
 This appeal emanates from a class action brought by stockholders of Signetics Corporation against Corning Glass Works and its formerly controlled subsidiary, Signetics. Plaintiffs were members of the class who purchased Signetics stock pursuant to a public offering on November 1, 1973 from underwriters for $17.00 per share. Plaintiffs claimed that the registration statement and the prospectus which accompanied the offering violated § 11(a)[3] and § 12(2) of the Securities Act of 1933. Their complaint alleged that sometime prior to the public offering, Corning, which owned 92% Of Signetics before the offering and 70% Afterwards, had decided to divest itself entirely of its interest in Signetics but had failed to disclose this intention in either the registration statement or the prospectus. The complaint further alleged that Signetics was aware of Corning's intention to sell and that its officers had assisted Corning in the search for a buyer. Eighteen months after the offering, Corning's interest was completely liquidated when Signetics merged into a subsidiary of United States Phillips Corporation, and Signetics' shareholders were required to surrender their stock for $8.00 per share.
 
 I.
 
 3
 The § 12(2) issue is presented in an appeal by John R. Cillag from an adverse summary judgment in favor of Corning and Signetics. The record indicates that the Signetics stock issue was subject to a "firm commitment" underwriting agreement, by which Signetics agreed to sell the entire stock issue to the Lehman Brothers Company, the lead underwriter, and to several other underwriters who participated in the offering. Appellant Cillag purchased his 2,200 shares not from Corning or Signetics, but from members of the underwriting syndicate 600 shares from a broker-dealer of the Advest Company and 1,600 shares from Shields & Company. No underwriters were named as defendants in this suit. By uncontroverted affidavit, each appellee averred that it does not control, and has never controlled, Advest Company, Shields & Company, or any other underwriter who participated in the offering. Appendix at 125a-126a. Appellants' documents contain no factual averments sufficient to put into contest the representation that Signetics and Corning occupied no special relationship with the underwriters who sold the securities to the appellants. Absent such a relationship, the appeal must fail.
 
 
 4
 We have no difficulty in concluding that Congress intended the unambiguous language of § 12(2) to mean exactly what it says: "Any person who . . . (2) offers or sells a security . . . shall be liable to the person purchasing from him . . . ." This section is designed as a vehicle for a purchaser to claim against his immediate seller. Any broader interpretation would not only torture the plain meaning of the statutory language but would also frustrate the statutory schema because Congress has also provided a specific remedy for a purchaser to utilize against the issuer as distinguished from the seller of a security. Thus, § 11 gives anyone acquiring a security a specific right of action for misrepresentations against every person who signed the registration statement, or was a director or partner of the issuer, or prepared a certified statement contained in the registration statement, or was an underwriter with respect to the security. 15 U.S.C. § 77k.
 
 
 5
 Ascertainment of congressional intent with respect to the standard of liability created by a particular section of the securities acts must "rest primarily on the language of that section." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 200, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). In interpreting liability provisions of the acts, we must respect recent Supreme Court teachings that militate against excessively expansive readings. Thus, proof of an actual purchase or sale rather than a lost opportunity to purchase is necessary to recover for a violation of Rule 10b-5, Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and scienter is necessary to establish a 10b-5 violation, Ernst & Ernst v. Hochfelder, supra. A defeated tender offeror has no implied cause of action for damages under § 14(e) of the Securities Exchange Act of 1934 or under Rule 10b-5. Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 42, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). Without allegations of manipulation or deception, no 10b-5 cause of action exists for simple breach of fiduciary duty to minority stockholders. Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Section 12(k) of the Exchange Act does not authorize the Commission to suspend trading in a security for more than one ten-day period on the basis of a single set of circumstances, SEC v. Sloan, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978), and an employees' noncontributory, compulsory pension plan is not a security within the meaning of the Securities Acts, International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).
 
 
 6
 Neither by theory nor factual presentation did the appellants proffer a case against appellees of aiding and abetting the actual seller. It is therefore unnecessary to discuss at length our decision in Monsen v. Consolidated Dressed Beef Co., 579 F.2d 793 (3d Cir. 1978). There a company that sold unregistered securities to its employees through a promissory notes program was found to have violated § 12(1) and § 12(2) of the 1933 Act, and § 10(b) of the Exchange Act of 1934. The company had borrowed money from a bank which demanded that the unregistered securities be subordinated to the bank's secured interest. The bank was found by the jury to be an aider-abettor, but the trial court entered judgment n. o. v. in its favor. On appeal, this court dealt solely with the question of how much evidence is required to constitute aiding and abetting. We determined that the evidence was sufficient and reinstated the jury verdict without specifically discussing whether there can be aider-abettor liability under § 12(2) as distinguished from § 10(b), on which the jury's verdict also rested. It is significant that there was no underwriting agreement in Monsen ; and here, unlike Monsen, the actual seller of the securities, the underwriters, were not named as defendants. Moreover, in the context of a summary judgment proceeding, appellants' evidence did not support an aiding and abetting theory against the defendants.
 
 
 7
 We therefore affirm the grant of summary judgment on the basis that appellant Cillag had no claim against the appellees under § 12(2) because he did not purchase the securities from them.
 
 II.
 
 8
 Consistent with his preliminary ruling, Judge McGlynn permitted appellants' case to go to the jury on the theory of a § 11 violation. Section 11(a) of the Securities Act of 1933 provides civil liability for material misstatements and omissions in registration statements, while enumerating those persons against whom suit may be brought. Section 11(e) establishes the appropriate method for measuring damages caused by a § 11(a) violation, but disallows recovery of those damages proved by defendant to have resulted from a cause other than the misrepresentation.[4] This provision places the burden of affirmatively proving lack of causation on the defendant. At trial, the question of causation was submitted to the jury, and appellants, faced with an adverse jury verdict, now mount a host of arguments generally clustering around the contention that there was insufficient evidence to submit the causation question to the jury.[5]
 
 
 9
 Signetics manufactures various types of integrated circuits using silicon semiconductor chips. Unlike most other producers in the industry, Signetics markets its products through distributors. Since the invention of integrated circuits in the early 1960's, the industry has been marked by rapid technological development, and it is extraordinarily volatile and fiercely competitive. By extensive testimony of the major defense witness, Otis Bradley, a securities analyst and an expert on semiconductor stocks, appellees proved that the period when appellants purchased their stock was "far and away the most tumultuous . . . ever experienced." Appendix at 1882a. Bradley testified with specificity as to the various economic and political factors that caused the acute market decline: high interest rates, inflation, the war in the Middle East, Watergate, Vice President Spiro Agnew's resignation, a large verdict against International Business Machines Corporation, the oil embargo and subsequent long lines at gasoline stations, closing of large automobile plants, President Nixon's resignation, United States-Soviet confrontations, and shortages and fears of shortages in general. Appendix at 1881a-1890a. Bradley's testimony furnished the foundation of the § 11(e) defense that the decline in price of appellants' stock was not due to the omission of any material fact in a registration statement.
 
 
 10
 The factual issues were submitted to the jury by special interrogatories.[6] The jury found that prior to the public offering Corning had adopted a policy to reduce its ownership interest in Signetics, and had attempted both to discontinue its financial support of Signetics and to sell its interest therein. Nevertheless, the jury found that this information was not omitted from the prospectus.
 
 
 11
 The jury also found, however, that the use of distributor sales left Signetics more vulnerable to a fall in demand than was typical for companies in the semiconductor industry, that this fact was omitted from the prospectus, and that the omission was of sufficient magnitude to make statements in the prospectus misleading. Relying on the Bradley testimony, the companies argued that decline in the price of Signetics stock resulted solely from factors other than the material omissions. In answer to the interrogatory on causation, the jury found that the companies had proved by a preponderance of the evidence that the omission from the prospectus was not the cause of appellants' injury.[7]
 
 
 12
 Our independent review of the Bradley testimony compels a rejection of appellant's contention that the evidence was insufficient to sustain the jury verdict. We agree with Judge McGlynn's characterization that "Mr. Bradley testified with impressive detail concerning the various factors responsible for the general decline in stock prices during the relevant period." Appendix at 314a. Neither a trial nor an appellate court has the authority to substitute its judgment for that of the jury and thus usurp the jury's function as the principal finder of fact. Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171, 1178 (3d Cir. 1976), Cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). Interrogatory No. 3 was fairly presented to the jury for resolution. So presented, Signetics and Corning had an especially high burden; they had to prove that the decline in value of Signetics stock resulted "solely" from factors other than the material omissions. Appellants' counsel met the issue directly in a forceful closing argument and urged the jury to find that appellees had not met their burden, appendix at 2343-2347a, 2350a, but the jury was persuaded otherwise.
 
 
 13
 For several reasons, we reject appellants' contention that the court erred in the phrasing of Interrogatory No. 3. First, as we have already observed, the interrogatory as stated placed an extremely high burden on the defendants. For example, had the jury been persuaded that only 1% Of the decline was due to the material omission, the plaintiffs could have prevailed in the factual determination. Second, we find no error in the trial court's stated reasons for rejecting the plaintiff's proffered interrogatory on this issue. Appendix at 316a-317a.
 
 
 14
 We have carefully considered specific refinements of the appellants' contentions as set forth in note 5 of this opinion, and in rejecting them, we decide that extended discussion here is not necessary. We conclude that the § 11 contentions were fairly presented to the jury with sufficient admissible evidence introduced to support the result.
 
 
 15
 The judgment of the district court will be affirmed.
 
 
 
 *
 Honorable Gustave Diamond, of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Section 12(2), 15 U.S.C. § 77L (2), provides:
 Any person who
 (2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
 
 
 [2]
 See Kramer v. Scientific Control Corp., 452 F.Supp. 812, 814-15 (E.D.Pa.1978); B&B Investment Club v. Kleinert's, Inc., 391 F.Supp. 720, 725-26 (E.D.Pa.1975); Kramer v. Scientific Control Corp., 365 F.Supp. 780, 791 (E.D.Pa.1973); DuPont v. Wyly, 61 F.R.D. 615, 626-27 (D.Del.1973); Dorfman v. First Boston Corp., 336 F.Supp. 1089, 1091-93 (E.D.Pa.1972)
 
 
 [3]
 Section 11(a), 15 U.S.C. § 77k(a), provides:
 (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue
 (1) every person who signed the registration statement;
 (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
 (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
 (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;
 (5) every underwriter with respect to such security.
 
 
 [4]
 The defense provision of § 11(e) reads as follows:
 That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.
 15 U.S.C. § 77(e).
 
 
 [5]
 Appellants argue that the companies failed to establish their § 11(e) defense in that they presented inadequate evidence to prove lack of causation under that section; that the decision of the jury on causation was not supported by the evidence; that uncontroverted admissions by the defendants necessitated that the jury find causation; that the jury's finding on causation was against the clear weight of the evidence; that the trial court's submission of the interrogatory on causation was inconsistent with § 11(e) and also deprived the jury of its right to compromise the damage issue; that the trial court's response to the jury's question coupled with the defectively worded interrogatory misled and confused the jury; that defendants' use of admittedly deceptive charts violated the hearsay rule and misled the jury on the issue of damages; and that the jury made a transparent error with respect to the disclosure in the prospectus of Corning's sales attempts before the offering
 
 
 [6]
 The interrogatories and jury answers were as follows:
 Interrogatory No. 1.
 (a) Do you find as a fact by a preponderance of the evidence that prior to November 1, 1973 Corning had adopted a policy to reduce its connection with Signetics and was actively seeking ways to carry out that policy including attempting to discontinue its financial support of Signetics and attempting to sell its interest in Signetics to a number of major corporations?
 YES X NO ______
 (b) If yes, do you find that such fact was omitted from the prospectus?
 YES ______ NO X
 Interrogatory No. 2.
 (a) Do you find as a fact by a preponderance of the evidence that the extent of Signetics Corporation's reliance on distributor sales left Signetics more vulnerable to a fall in demand than was typical for companies in the semiconductor industry?
 YES X NO ______
 (b) If yes, do you find that such fact was omitted from the prospectus?
 YES X NO ______
 (c) If yes, do you find that the omission of that fact in the November 1, 1973 prospectus was an omission of a material fact necessary to make statements contained in the November 1, 1973 prospectus not misleading?
 YES X NO ______
 
 
 [7]
 The jury answered "yes" to Interrogatory No. 3 which asked: "Do you find that the defendants proved by a preponderance of the evidence that the decline in price of Signetics stock during the period November 1, 1973 to June 10, 1975 resulted solely from factors other than the material facts you found were omitted from the prospectus?"