**In re WICAT SECURITIES LITIGATION.**

**Civ. No. C–83–1117W.**

United States District Court,
D. Utah, C.D.

Dec. 20, 1984.

Peter W. Billings, Jr., Rand M. Elison, Fabian & Clendenin, Salt Lake City, Utah, for plaintiffs Lee and Edith Woods, Bruce Youngman, Robert A. and Lou Ann Greco, William B. Weinberger.

John E. Grasberger, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., for plaintiff William B. Weinberger.

Stanley M. Grossman, Pomerantz, Levy, Haudek, Block & Grossman, New York City, for plaintiff Guillermo Astudillo.

Irving Malchman, Kaufman, Malchman & Kirby, New York City, for plaintiff Lawrence Epstein.

Joseph Weiss, Robert S. Schachter, Goodking, Wechsler, Labaton & Rudoff, New York City, for plaintiff Nessim Husni.

Arthur N. Abbey, Ralph L. Ellis, Abbey & Ellis, New York City, for plaintiffs Robert A. and Lou Ann Greco.

Leonard Barrack, Gerald J. Rodos, Edward M. Gergosian, Barrack, Rodos & Bacine, Philadelphia, Pa., for plaintiffs Lee and Edith Woods.

Harvey Greenfield, New York City, for plaintiff Guillermo Astudillo.

I. Stephen Rabin, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Bruce Youngman.

David E. West, Armstrong, Rawlings, West & Brown, Salt Lake City, Utah, David B. Gold, Paul F. Bennett, Richard A. Rogoff, San Francisco, Cal., for plaintiff Thomas Quinn.

Daniel L. Berman, Peggy A. Tomsic, Berman & Anderson, Salt Lake City, Utah, for defendants Dustin H. Heuston, Nancy Heuston, Robert Mendenhall, Frank M. Richardson, W. Paul Warnock, Wicat Systems, Inc. & Wicat Educ. Institute.

Dale H. Kimball, Robert S. Clark, James D. Gordon, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, Phillip K. Howard, Jack P. Levin, Howard, Darby & Levin, New York City, for defendants C. Victor Bunderson, W.H. Conroy, Seth H. Dubin, Dr. Thomas Duerden, Simon M. Robertson, Arthur G. Altschul and The Independent Inv. Co.

David B. Watkiss, Watkiss & Campbell, Salt Lake City, Utah, Gary L. Francione, Thomas D. Barr, Robert D. Joffe, Cravath, Swaine & Moore, New York City, for defendants Blyth Eastman Paine Webber, Inc., Hambrecht & Quist, Inc., Kleinwort Benson, Inc., and Kleinwort Benson, Ltd.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

Defendants Dustin H. Heuston, Nancy Heuston, Robert Mendenhall, Frank M. Richardson, W. Paul Warnock, WICAT Systems, Inc., and WICAT Education Institute (hereinafter referred to as the WICAT defendants) moved to dismiss count II of the plaintiffs' consolidated complaint. The WICAT defendants contend that count II does not state a claim as to them.

The motion was orally argued on November 29, 1984. Plaintiffs were represented by Rand M. Elison, Ralph Ellis, David West, and George Donaldson. Defendants were represented by David B. Watkiss, Robert Jaffey, Robert Clark, Phillip K. Howard, Daniel L. Berman, and Peggy A. Tomsic. The court took the matter under advisement. Since the hearing, the court has reviewed the memoranda submitted by the parties [1] as well as the authorities cited.

---

1. The court also read and considered the letter submitted after oral argument by the WICAT defendants, as well as plaintiffs' responsive letter. Although such a letter is not provided for in Local Rule 5(e), it was considered because the WICAT defendants were not given adequate time to prepare the reply memorandum that is provided for in that rule. Plaintiffs' opposing memorandum was filed only two days before oral argument, even though the WICAT defendants' motion and supporting memorandum had been filed seven months previously.

In the future, counsel for all parties should strictly follow Local Rule 5(e) unless the court grants leave to deviate from it. Page limitations should also be strictly observed.

Being now fully advised, the court renders the following decision.

### The Facts

WICAT Systems, Inc. ("WICAT") made an initial public offering of its stock on June 30, 1983. The offering was made pursuant to a registration statement, dated May 3, 1983, and an amendment to the registration statement and a prospectus, both dated June 30, 1983. The offering was of 3,650,000 shares of WICAT common stock, which sold at $18.00 per share. At the same time, several shareholders of WICAT, who had purchased or obtained stock privately, offered to the public 350,000 additional shares, which also sold at $18.00 per share. This group of private shareholders included four of the WICAT defendants.

All shares in the offering were sold by the WICAT defendants to a group of underwriters, who then sold the shares to the public. The WICAT defendants claim that they sold the shares in the offering through a "firm commitment underwriting." Although plaintiffs claim it is not proper to characterize the underwriting at this point, they did not allege that the underwriters acted as anything more than independent underwriters, and certainly did not allege that the underwriters were acting as the WICAT defendants' agents. All agree that none of the plaintiffs purchased any shares directly from any of the WICAT defendants.

The WICAT stock which sold at $18.00 per share on June 30, 1983 was selling at less than $4.00 per share on March 12, 1984. Plaintiffs contend that the stock initially sold at an artificially high price because the prospectus contained misrepresentations and omissions. Count II of the

consolidated complaint, which deals with these alleged misrepresentations and omissions, is based on §§ 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* (2), 77*o*.

The WICAT defendants claim that § 12(2) creates liability only for those sellers who are in "strict privity" with the plaintiffs. Plaintiffs, on the other hand, claim that § 12(2) has consistently been interpreted to create liability for those who participate in the sale of securities to the plaintiffs, thus arguing for a "loose privity" requirement. Although the positions of the two sides are polarized on opposite ends of the privity spectrum, the correct interpretation appears to be in the middle of the spectrum.

### Section 12(2) of the 1933 Securities Act

█ The language of § 12(2) appears to support the WICAT defendants' strict privity interpretation. In pertinent part, the statute provides that

Any person who—

.　　.　　.　　.

　(2) offers or sells a security ..., by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact ..., and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such truth or omission,

shall be liable to *the person purchasing such security from him....*

15 U.S.C. § 77*l* (emphasis added). Under § 12, the plaintiff may recover the consideration paid for the security if he tenders it, or recover damages if he no longer owns the security.[2] *Id.* The language of the statute seems to create liability only for

---

**2.** The WICAT defendants argue that Congress intended the § 12(2) rescission remedy to be available only against a defendant in strict privity with the plaintiff. This argument is analytically sound, since it makes little sense to rescind a sale that never took place.

However, Congress expressly made the § 12(2) rescission remedy available against controlling persons of the immediate seller. *See*

§ 15 of the Securities Act of 1933, 15 U.S.C. § 77 *o*. Under § 15, a controlling person might be forced to accept the tender of securities he never owned and to refund the purchase price he never received. While not analytically pleasing, it was clearly the intent of Congress that the rescission remedy be available against persons other than just the immediate seller.

the immediate seller from whom the plaintiff purchased the stock.

Although the language of the statute seems to support the WICAT defendants' interpretation, the case law supports plaintiffs' interpretation. Of the seven Circuits that have chosen an interpretation of the § 12(2) privity requirement, six have chosen the "loose privity" interpretation of the plaintiffs. *Davis v. Avco Financial Services,* 739 F.2d 1057, 1065–68 (6th Cir.1984); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1294–95 (9th Cir.1982); *Junker v. Crory,* 650 F.2d 1349, 1360 (5th Cir.1981); *Stokes v. Lokken,* 644 F.2d 779, 784–85 (8th Cir. 1981); *Lawler v. Gilliam,* 569 F.2d 1283, 1287–88 (4th Cir.1978); *Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1052–53 (2d Cir.1969) (adopting similar interpretation for § 12(1) liability). *See also Lennerth v. Mendenhall,* 234 F.Supp. 59, 65 (N.D.Ohio 1964) (initially articulating the "participation" test for § 12(2) liability). Only the Third Circuit has adopted the "strict privity" interpretation favored by the WICAT defendants. *Collins v. Signetics Corp.,* 605 F.2d 110, 113–14 (3d Cir.1979). *See also Davis v. Avco Financial Services,* 739 F.2d 1057, 1069–71 (6th Cir.1984) (Lively, J., concurring and dissenting).

Whether strict privity is required for § 12(2) liability is an open question in the Tenth Circuit. Even so, this court cannot ignore the heavy weight of authority supporting plaintiffs' interpretation. Consequently, this court will not force plaintiffs to meet a "strict privity" requirement in their § 12(2) claim. However, plaintiffs have not alleged sufficient facts to meet even a "loose privity" standard. Therefore, count II of the consolidated complaint must be dismissed as to the WICAT defendants.

### The "Substantial Factor" Standard

The privity standard adopted by most of the courts in § 12(2) cases was borrowed from torts. It originated in *Lennerth v. Mendenhall,* 234 F.Supp. 59 (N.D.Ohio 1964).

[L]iability must lie somewhere between the narrow view, which holds only the parties to the sale, and the too-liberal view which would hold all who remotely participated in the events leading up to the transaction. We think that the line of demarcation must be drawn in terms of cause and effect: To borrow a phrase from the law of negligence, did the injury to the plaintiff flow directly and proximately from the actions of this particular defendant? If the answer is in the affirmative, we would hold him liable. But for the presence of the defendant ... in the negotiations preceding the sale, could the sale have been consummated? If the answer is in the negative, and we find that the transaction could never have materialized without the efforts of that defendant, we must find him guilty.

*Id.* at 65.

The Fifth Circuit recast the *Lennerth* "proximate cause" test, finding liability if the defendant's actions were a "substantial factor" in bringing about the plaintiff's purchases. *Lewis v. Walston & Co.,* 487 F.2d 617, 622 (5th Cir.1973). The Fifth Circuit's test focuses on the defendant's participation in the sale to the plaintiff, not his involvement in the issuance or prior sales of the security. *See Lewis,* 487 F.2d at 622 (test is whether the defendant's actions were "a 'substantial factor' *in bringing about the plaintiffs' purchases,* and thus the 'proximate cause' *of those purchases*" (emphasis added)).

Other courts have also focused on the particular sale at issue when finding "participation" liability.

If· the defendant is not in literal privity with the plaintiff, his conduct must *proximately cause the sale,* or he must be a "motivating force" *behind the sale;* mere participation in the events leading up to the sale is not sufficient.

*Hokama v. E.F. Hutton & Co.,* 566 F.Supp. 636, 641 (C.D.Cal.1983) (emphasis added); *see also Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980) (§ 12(2) liability arises only for those "whose participation in the buy-sell transaction is a substantial

factor in causing the transaction to take place"). The Fourth Circuit appears to require that the defendant has acted as an agent "on behalf of the actual owner" of the security, stating that "any person who actively solicits an order, participates in the negotiations, or arranges the sale" is potentially liable. *Lawler v. Gilliam*, 569 F.2d 1283, 1287–88 (4th Cir.1978).

Although there are a plethora of cases where courts have set out the "substantial factor" standard, there are few cases where a court has ruled on the narrow question of whether an issuer of securities is a "substantial factor" in the sale of those securities by the underwriters of the issue. Most of the cases involve a factual situation where the defendant was not in the chain of distribution of the security. The defendant, although he never owned the security, was found to be a "seller" because he was behind the actual sale to the plaintiff. Because he was a motivating force behind the sale, it would be inequitable to allow him to escape liability.

■ The issuer-underwriter relationship is quite different from the relationship between the defendant and immediate seller in cases where the defendant actively participated in the sale to the plaintiff. In most underwriting arrangements, the issuer and underwriter are independent, each acting in its own interest. An issuer participates in the sale of its securities by an underwriter only if "some special relationship exists between the issuer and the actual seller of the securities." *Collins v. Signetics Corp.*, 605 F.2d 110, 112 (3d Cir. 1979). This relationship can be control, agency, or direct participation in the sale from the underwriter to the plaintiffs. Unless a special relationship of this kind is alleged, a § 12(2) claim has not been stated against an issuer if the securities were purchased from an underwriter.

Most modern underwriting of securities is done on an arm's-length basis, with the issuer and underwriters each acting in their own interest rather than in concert.

An underwriter is not, as a matter of law, an agent of the corporation. While the facts may be such as to make an underwriter an agent of a corporation, this is not usually the case. And the fact that a corporation advertises a person as an underwriter of its stocks and bonds does not as a matter of law make such underwriter an agent of the corporation. On the contrary, he is an ultimate purchaser of so much of the stock which he agrees to take and which he does not sell. And in selling stocks or bonds the underwriter is obviously acting solely in his own interest, and to relieve himself of the necessity of taking such stock.

1A *Fletcher Cyclopedia of the Law of Private Corporations* § 230 (1983 rev. vol.) (footnotes omitted).

In this case, there are no allegations that the relationship between WICAT and the underwriters was anything more than a typical "firm commitment" underwriting where the underwriters purchase the shares from the issuer. There are no allegations that the underwriters were acting as agents of WICAT, which would be the case if the arrangement was a "best efforts" underwriting. There are no allegations that WICAT controlled any of the underwriters. There are no allegations, in fact, that WICAT and the other WICAT defendants did anything more than an issuer would normally do in a firm commitment underwriting.

■ The only allegations made by the plaintiffs against the WICAT defendants are general allegations that would apply to any issuer of securities.

71. Defendants other than the Lead Underwriters played an active and substantial role in promoting the sale of WICAT common stock issued on the Offering and the purchase of such stock by plaintiffs and other members of the class by (i) aiding and participating in the preparation of the Prospectus, (ii) negotiating or approving the underwriting agreement, (iii) signing the Registration Statement which incorporated the Prospectus and approving the Offering as members of WICAT's Board of Directors; and (iv)

failing to disclose that the Prospectus contained material omissions.

72. By virtue of the foregoing, the defendants other than the Lead Underwriters provided substantial assistance, and their actions were a substantial factor, in the sale of shares issued on the Offering to plaintiffs and other members of the Class.

Consolidated Complaint, ¶¶ 71–72. These allegations are not enough to state a § 12(2) claim against an issuer of securities who did not sell the securities directly to the plaintiffs.

The Third Circuit is the only Circuit that has addressed the question of § 12(2) liability of the issuer of securities where the plaintiffs purchased their securities from a "firm commitment" underwriter. *Collins v. Signetics Corp.*, 605 F.2d 110 (3d Cir. 1979). The *Collins* court held that the issuer was not liable under § 12(2) to the plaintiffs and affirmed the district court's grant of summary judgment for the issuer. *See id.* at 114. In order to affirm the grant of summary judgment, the *Collins* court adopted a "strict privity" standard that this court declines to adopt. But adopting the *Collins* court holding does not contradict this court's adoption of a "loose privity" standard. Indeed, even under the loosest privity standard there would not be adequate participation to hold an issuer liable under § 12(2) to a purchaser who purchased the security from an underwriter.

There are two main reasons why § 12(2) liability should not extend to issuers who were not in privity with the plaintiffs. First, it is unnecessary to trace § 12(2) liability back through the immediate seller to the issuer; the issuer already has primary liability under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Therefore, an issuer does not escape liability by issuing stock through an underwriter,[3] and there is no need for the courts to stretch § 12(2) liability to hold issuers liable for the sales of underwriters. By contrast, other

"participants" in a sale would escape liability unless a "loose privity" standard is applied. A common theme in all the cases where a defendant not in privity with the plaintiff was held to be a "seller" is that the defendant would otherwise escape all liability. *See, e.g., Davis v. Avco Financial Services, Inc.*, 739 F.2d 1057 (6th Cir. 1984) (defendant who was held to be a § 12(2) "seller" provided financing to purchasers of securities).

Moreover, although the WICAT defendants are not directly liable to the plaintiffs under § 12(2), it may be the WICAT defendants who eventually bear the § 12(2) liability for the plaintiffs' losses. If the defendant underwriters are found to be liable to the plaintiffs, the underwriters can attempt to recover from the WICAT defendants.

Subject to these exceptions involving controlling persons, agents and certain aiders and abettors—the last of which may sometimes permit Z to sue X as well as Y even though X sold to Y, who sold to Z, if Z can prove that X aided and abetted Y's violation of § 5 or Y's fraud—it seems quite clear that § 12 contemplates only an action by a buyer against *his immediate seller.* That is to say, in the case of the typical "firm-commitment underwriting," the ultimate investor can recover only from the dealer who sold to him. But the dealer in turn can recover over against the underwriter, and the latter (with some caveat by reason of the "preliminary negotiations" clause of § 2(3)) against the issuer; and each defendant can bring in his predecessor in the chain of distribution as a third-party defendant under the Federal Rules of Civil Procedure.

3 L. Loss, *Securities Regulation* 1719–20 (2d ed. 1961) (as modified by 6 L. Loss, *Securities Regulation* 3840 (2d ed. Supp. 1969)) (footnotes omitted). In this case, the issuer and its controlling person defendants are co-defendants with the underwrit-

---

**3.** If an issuer does try to escape liability by concocting a sham sale through a strawman underwriter, the issuer will be liable as a controlling person of the underwriter by virtue of § 15 of the Securities Act of 1933, 15 U.S.C. § 77o.

**1242**

ers. Consequently, "upstream" liability could settle on the WICAT defendants without bringing in additional parties as third-party defendants.

In short, an issuer is not liable, as a matter of law, to a securities purchaser who purchased the securities from an underwriter where there is no relationship between the issuer and underwriter other than a firm commitment underwriting agreement. Some direct participation in the sale between underwriter and buyer must be alleged in order to state a § 12(2) claim. Other than this narrow holding, this court will not attempt to plumb the depths of the "substantial factor" standard of liability.

The plaintiffs may be able to allege some type of participation by the WICAT defendants in the sale of the securities by the underwriters to the plaintiffs. Consequently, leave will be given to amend the consolidated complaint to attempt to state a § 12(2) claim against the WICAT defendants. However, such a claim will have to be based on either specific allegations of some sort of agency or controlling relationship between WICAT and the underwriters, or allegations that the participation of the WICAT defendants was a substantial factor in the sale of the securities from the underwriters to the plaintiffs. From the facts in this case as they appear to this court, that will be a difficult task.

Accordingly,

IT IS HEREBY ORDERED that count II of the consolidated complaint is dismissed as to the WICAT defendants. Leave will be given for the plaintiffs to amend their complaint within thirty days to state a § 12(2) claim against the WICAT defendants.