Milo HARRISON, Martin R. Kaiden, Peter T.B. Schaefer, John P. Kelly, Robert J. Meisner, Michael Cavalcanti, David E. Meyers, Sadashiu S. Shenoy, Gabriel Diamond, David J. Kincaid, Jr., John J. Lenahan and Robert H. Henley, Plaintiffs,

v.

ENVENTURE CAPITAL GROUP, INC., a New York corporation, Enventure Energy, Inc., a New York corporation, Enventure Energy Enhanced Oil Recovery Associates—Charco Redondo Propane, a New York limited partnership, Ronald E. Allen, an individual, Marine Midland Bank, National Association, a National banking association, the Mutual Fire, Marine and Inland Insurance Company of Philadelphia, Pennsylvania, a Pennsylvania corporation, and Freed, Maxich,[1] Sachs & Murphy, P.C., Defendants.

No. CIV–86–585E.

United States District Court, W.D. New York.

Aug. 4, 1987.

---

1. The second component of this defendant's name is "Maxick," although the plaintiffs erroneously refer to "Freed Maxich" throughout their papers.

Joseph A. Ables, Buffalo, N.Y., for plaintiffs.

Ellen M. Baratz, New York City, for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

The plaintiffs are twelve investors who bought limited partnership interests in Enventure Energy Enhanced Oil Recovery Associates-Charco Redondo Propane ("Charco Redondo"), a tax shelter program. They have brought this action against various corporate, partnership and individual defendants charging them with fraud in connection with the offer and sale of those interests. The Mutual Fire, Marine and Inland Insurance Company of Philadelphia, Pennsylvania ("Mutual Insurance") provided the surety bond that enabled the partnership to obtain the needed financing from Marine Midland Bank, National Association. Mutual Insurance now moves to dismiss the counts against it for violations of the securities laws, for misrepresentation and for RICO[2] violations, as well as that count which seeks a declaratory judgment regarding the rights of the plaintiffs under certain assumption agreements.

Section 12(2) of the Securities Act of 1933[3] ("the 1933 Act") creates a private right of action on behalf of purchasers as against "any person who * * * (2) offers or sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements * * * not misleading * * *." 15 U.S.C. 77*l*(2). The movant was neither the purchasers' "immediate offeror or seller" nor one who "significantly participate[d] in [the] transaction [so as] to warrant imposition of liability." *See, Brick v. Dominion Mortg. & Rlty. Trust,* 442 F.Supp. 283, 292 (W.D.N.Y.1977). The plaintiffs maintain rather that Mutual Insurance is subject to liability under section 12(2) as an aider and abettor of the principal sellers of the partnership units. Complaint at ¶ 56.

Imposition of secondary liability on an aider and abettor has been recognized in this Circuit. *See Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1052–1053 (2d Cir.1969). The United States Court for the Southern District of New York interpreted the standard set by the *Katz* case to be "extremely liberal," requiring "only some indicia of participation or solicitation on the part of an individual to warrant the imposition of liability." *In Re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 380 (1973). However, in a series of recent United States Supreme Court decisions, a stricter standard has been formulated for determining when a private cause of action may be implied under a statute that does not explicitly provide such. In light of these cases, the liberal tendency expressed in *Katz v. Amos Treat & Co.* merits reconsid-

**2.** Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

**3.** 15 U.S.C. § 77a *et seq.*

eration. *See Akerman v. Oryx Communication, Inc.*, 609 F.Supp. 363, 373 (S.D.N.Y. 1984). See also Judge Goldberg's dissent in *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1088 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980) ("there has been a remarkable change of attitude by the Supreme Court regarding the inference of private rights of action").

In *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979), it was noted that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best" and at 578 that "[t]he ultimate question is one of congressional intent * * *." There it was determined that neither the language nor the legislative history of section 17(a) of the Securities Exchange Act of 1934 granted a private right of action. Congress must not have intended to create such a right and therefore the inquiry is at an end. *Id.* at 576, 99 S.Ct. at 2489. Where a statute does expressly provide a particular remedy (as section 12(2) does against sellers and offerors), "a Court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). *See also Kissinger v. Reporters Committee*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).

The Second Circuit has not as yet reevaluated the expansive position regarding section 12(2)'s aider and abettor liability that it had sanctioned prior to the strict statutory construction approach espoused by the highest court since *Touche Ross & Co. v. Redington, supra.* The Ninth Circuit declined to decide the issue directly, but noted the "doubtful nature" of both conspirator and aider and abettor liability in section 12(2) cases. *Admiralty Fund v. Jones*, 677 F.2d 1289, 1294–1295 fn. 4 (1982). Also, the Third Circuit did not squarely confront the issue in *Collins v. Signetics Corp.*, 605 F.2d 110 (1979), because the

appellants' evidence did not support their aiding and abetting theory against the appellees. Nevertheless that Court declared section 12(2) to mean "exactly what it says," and that any broader interpretation would "torture" the statute's plain meaning and "frustrate" Congress's intended statutory scheme. *Id.* at 113. Neither controlling persons nor aiders and abettors are sellers within the meaning of section 12(2) according to *Huddleston v. Herman & MacLean*, 640 F.2d 534, 551 fn. 27 (5th Cir.1981), *aff'd in part, rev'd in part*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548, *on remand* 705 F.2d 775 (1983). Noting that the Supreme Court has restricted implied causes of action in securities fraud litigation, *Benoay v. Decker*, 517 F.Supp. 490, 494 (E.D.Mich.1981), *aff'd*, 735 F.2d 1363 (6th Cir.1984), rejected an aider and abettor theory of liability under section 12(2).

■ On the basis of the foregoing, as well as the significant additional authority that Mutual Insurance has cited in its commendable memorandum of law, this Court agrees that an aiding and abetting theory to establish liability under section 12(2) would be out of harmony with the strict statutory construction approach to private rights of action under the securities laws which has been embraced by the Supreme Court.

■ Whereas this Court has declined to acknowledge aider and abettor liability in connection with section 12(2) of the 1933 Act, such a theory is unquestionably recognized [5] under section 10(b) [6] of the Securities Exchange Act of 1934 ("the 1934 Act"). The prerequisities for establishing aider and abettor liability thereunder are (1) the violation of a securities law by the primary party, (2) knowledge of the violation by the aider and abettor and (3) substantial assistance by the aider and abettor in achieving the primary violation. *IIT, an Intern. Inv. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). A complaint alleging securities fraud violations must satisfy the particular-

---

**5.** It is recognized, that is, in this and other circuits. The United States Supreme Court has expressly reserved any decision on the issue. *Herman & MacLean v. Huddleston*, 459 U.S. 375,

379 fn. 5, 103 S.Ct. 683, 685 fn. 5, 74 L.Ed.2d 548 (1983).

**6.** 15 U.S.C. § 78j(b).

ity requirement of Fed.R.Civ.P. rule 9(b). *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982). Assuming that the fraud claims against the primary violators have been pled with sufficient particularity, there remains to be established the knowledge and the substantial assistance requirements. It is sufficient, per rule 9(b), to aver knowledge only generally, and knowledge may even be inferred at times, as the plaintiffs maintain. *See Management Assistance Inc. v. Edelman*, 584 F.Supp. 1016, 1018 (S.D.N.Y.1984). However, there must still be contained in the Complaint allegations that will form a sufficient factual basis to support such an inference. *Ibid.*

■ Unlike the knowledge element, the acts or omissions that comprise the necessary substantial assistance must be pleaded with specificity. Generalized and conclusory allegations that a defendant aided and abetted the principal wrongdoers will not suffice. *See Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir.1983).

The "BACKGROUND FACTS" for the section 10(b) claims—the FIFTH COUNT and the SEVENTH COUNT—against Mutual Insurance are found in paragraphs 54–56 of the Complaint:

"54. Upon information and belief, defendants, Mutual Fire [Mutual Insurance] and Marine Midland, were generally aware that their role in financing and providing a surety bond was part of an overall activity that was improper and in violation of the securities law when such role as lender and surety were included in the activities of Enventure Energy, Eventure Capital, Charco Redondo—Propane and Allen as herein set forth.

"55. Upon information and belief, defendant Mutual Fire and Marine Midland's actions as lender and surety, knowingly and substantially assisted Enventure Energy, Enventure Capital, Charco Redondo—Propane and/or Allen in violating the securities laws as herein set forth.

"56. Upon information and belief, * * Mutual Fire * * * [was] aware and knew that [its] involvement with defendants, Enventure Capital, Enventure Energy, Charco Redondo Propane and Allen, was part of an activity that was improper and illegal under the Securities Act [the 1933 Act] and the Exchange Act [the 1934 Act] and, as a result, it is alleged that Mutual Fire * * * [is] liable to the same extent as Enventure Energy, Charco Redondo Propane, Enventure Capital and Allen under all of the securities violations causes of action herein on the grounds that Mutual Fire * * * aided and abetted Enventure Capital, Enventure Energy, Charco Redondo and Allen."

■ The plaintiffs have alleged an awareness on the part of Mutual Insurance of a scheme to defraud them, but have failed to propose any specific facts that would lend support to such an implication. Beyond the bare fact of Mutual Insurance's status as provider of the surety bond, no other facts buttress the conclusion that it was generally aware that in its role as surety it was taking part in any improper activity. Liberal use of section 10(b)'s catchwords[7] will not compensate for a clear deficiency in factual support. *See Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) ("Plaintiff's conspiracy claims are obviously founded more on an examination of Rule 10b–5 than on an investigation of the facts of the alleged fraud. The word 'conspiracy' does not alone satisfy the specificity requirement of Rule 9(b).").

It is further noted that all three of the above paragraphs are based upon information and belief. This alone may be fatal to a claim of fraud unless the allegations are accompanied by a statement of the facts upon which the belief is founded. *Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). The plaintiffs have set forth no facts from which may be drawn a conclusion that Mutual Insurance knew or should have known of any fraudulent activities, or how it substantially assisted in perpetu-

---

7. See especially ¶¶ 91 and 104 of the Complaint.

ating such fraud. Providing a surety bond and requiring promises of reimbursement are not indicative of either an awareness of a scheme to defraud investors or a deliberate participation in securities laws violations. The plaintiffs' section 10(b) claims fall far short of that which is required by rule 9(b) given the intent of the United States Supreme Court in preventing "a plaintiff with a largely groundless claim to simply take up the time of a number of other people * * *." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Having thus determined that the allegations in paragraphs 54–56 fail to state a claim under section 10(b), it follows that the facts contained therein cannot represent the "racketeering activity" component[8] of the RICO claim alleged in the EIGHTH COUNT. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19, 20 (2d Cir. 1983), *cert. denied sub nom. Moss v. Newman*, 464 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). "Racketeering activity" includes any offense involving fraud connected with the sale of securities, 18 U.S.C. § 1961(1)(D), and must comply with the particularity requirements of rule 9(b). Although the paragraphs comprising the EIGHTH COUNT mention mail fraud, wire fraud and other fraudulent conduct (Complaint, ¶¶ 108–110), they represent nothing more than an exercise in a tracking of statutory language. Paragraph 108, for example, relates that, upon information and belief, Mutual Insurance and five other defendants "used the mails on more than two occasions for the purpose of executing and attempting to execute a scheme or artiface [sic] to defraud plaintiffs of monies and/or securities, in violation of 18 U.S.C. 1341." The factual allegations incorporated by reference in the EIGHTH COUNT do

nothing to enlighten this Court as to the nature or contents of that which Mutual Insurance allegedly sent through the mail, by whom any document was signed, to whom it was addressed or when or by whom it was mailed. Those paragraphs which do relate more specific details of mail fraud or wire fraud invariably involve defendants other than Mutual Insurance. *See, e.g.,* ¶¶ 24, 28 and 32. The RICO claim therefore cannot stand as against the movant. *Moss v. Morgan Stanley, Inc., supra,* at 18–19 ("since the complaint contains no *valid* allegations of 'fraud' to underpin the 'predicate acts' of 'racketeering activity,' it necessarily must fail").

■ The plaintiffs further contend that Mutual Insurance is subject to liability as a "control person" within the meaning of section 15 of the 1933 Act and of section 20 of the 1934 Act. Congress did not provide a definition of "control person," leaving it instead to be formulated by the federal courts. In this circuit, the prevailing rule was provided in *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir.1973) (*en banc*), wherein the doctrine of culpable participation was established. Not only must the purported control person actively participate in the overall management and operation of the controlled entity, but it must actively participate in some meaningful sense in the fraud perpetrated by that entity. *Id.* at 1299. *Accord, Gordon v. Burr,* 506 F.2d 1080, 1085–1086 (2d Cir.1974). The Third Circuit has agreed with this rather restrictive interpretation noting that Congress through the use of such words as "cunning," "manipulative," "deceptive" and "fraudulent" which appear throughout the legislative history of rule 10b–5 intended that liability would only attach where an element of culpability was present. *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 885 (1975). Because this same standard of culpability was "ever-present" in the securities laws, that Court applied that

---

**8.** In order to establish liability under RICO it is necessary to show that a person has committed two or more predicate acts constituting a pattern of racketeering activity thereby directly or indirectly investing in, maintaining an interest in or participating in an enterprise the activities of which affect interstate or foreign commerce. **18 U.S.C. § 1962.**

standard in its analysis under section 20(a). *Ibid.* Moreover, there is no basis for assuming that interpretation of control person liability pursuant to section 20(a) of the 1934 Act—which section was relevant in each of the above mentioned cases—should differ from that pursuant to section 15 of the 1933 Act. *See Securities & Exch. Com'n v. Management Dyn., Inc.,* 515 F.2d 801, 812 (2d Cir.1975) (section 20(a) of the 1934 Act is the analogue of section 15 of the 1933 Act).

■ Allegations in support of the control person claim against Mutual Insurance are contained in ¶¶ 42–47 and 55–56 of the Complaint. Mutual Insurance contends that the allegations, devoid of specific facts, are insufficient to withstand a motion to dismiss pursuant to Fed.R.Civ.P. rule 12(b)(6). The movant further maintains that merely tracking the language of the statutes is insufficient. However, "merely pleading in broad terms does not amount to failure to state a claim, especially when as here the generality of the pleading arises from use of the statutory language." *Minkoff v. Steven Jrs.,* 260 F.2d 588, 589–590 (2d Cir.1958). Former requirements of factual pleading have been eliminated by Fed.R.Civ.P. rule 8. The "modern philosophy" of pleading was given its definitive expression by the unanimous Court in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See also* 2A J. Moore & J. Lucas, Federal Practice ¶ 8.13 at 8–57 through 8–62. It is well-established that "outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts." *Nagler v. Admiral Corporation,* 248 F.2d 319, 322 (2d Cir.1957).

Nevertheless, the instant allegations as to control persons are not only broad, but are so vague and conclusory that they cannot withstand the present motion. Para-graphs 42–47 allege that, both as a result of its status as a surety and through its affirmative actions, Mutual Insurance controlled the structuring of the partnership and approved expenditure of loaned funds and the qualification and acceptance of limited partners. It is further alleged that Mutual Insurance knowingly and substantially assisted the controlled entities to violate the securities laws as set forth. Complaint ¶¶ 55–56. The "affirmative actions" by which Mutual Insurance exercised control over the management and structuring of the partnership are left to one's imagination. Although this Court must for purposes of the present motion accept the plaintiff's description of events and any conclusions that can reasonably be drawn from them, we need "not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened * * *." 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1357 at 597. The degree of control attributed to Mutual Insurance does not "reasonably follow" from its position as surety. Without either direct factual assertions or at least facts from which a reasonable inference may be drawn in support of its allegations, a claim that can meet this Circuit's culpable participation standard has not been stated.

■ Inasmuch as complete diversity of citizenship does not exist among the parties, and no claim raising a federal question has been adequately stated, the plaintiffs claim for a declaratory judgment relative to a certain assumption agreement must be dismissed for lack of subject matter jurisdiction. *See Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In accordance with the foregoing, it is hereby ORDERED that the motion is granted and that the FIRST, FIFTH, SIXTH, SEVENTH and EIGHTH counts as against Mutual Insurance are dismissed,

without prejudice however to a timely motion for leave to amend the Complaint.[9]

9. Any such motion is to be filed and served within 30 days of the filing of this Memorandum and Order.