**In re CRAFTMATIC SECURITIES LITIGATION.**

**No. 88–4530.**

United States District Court, E.D. Pennsylvania.

Jan. 13, 1989.

As Amended Jan. 27, 1989.

Leonard Barrack, Barrack, Rodos & Bacine Philadelphia, Pa., Richard D. Greenfield, Greenfield & Chimicles, Haverford, Pa., for plaintiffs.

Alan C. Kessler, Mark R. Rosen, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for defendants.

Steven R. Waxman, Howard E. Goldberg, George S. Kounoupis, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Advest, Inc.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

In this federal securities class action, Defendants Craftmatic/Contours Industries, Inc., Stanley Kraftsow and Carolyn Kraftsow ("Craftmatic Defendants") move to dismiss Counts I, II and III of Plaintiff's Consolidated Amended Complaint ("Complaint") for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and for failure to comply with the pleading requirements of Rule 9(b); to dismiss Plaintiff's pendant state law claim—Count IV—for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1); or, in the alternative, to strike Plaintiff's legally insufficient averments pursuant to Fed.R.Civ.P. 12(f). Defendant Advest moves to dismiss Count I to the extent that the factual allegations set forth in paragraph 49(d)–(g), (i)–($l$) purport to state a claim against Advest upon which relief can be granted; or in the alternative, to strike paragraph 49(d)–(g) and (i)–($l$) as immaterial pursuant to Fed.R.Civ.P. 12(f). Advest further moves pursuant to Rule 12(e) for a more definite statement as to Count III of the Complaint. For the reasons stated below, I conclude that:

I) Count I should be dismissed with respect to all defendants for failure to state a claim upon which relief can be granted;

II) Count III should be dismissed with respect to the Craftmatic Defendants for failure to state a claim upon which relief an be granted;

III) Count II should be dismissed with respect to the Craftmatic Defendants for failure to state a claim upon which relief can be granted to the extent it incorporates paragraph 49(a)–(m), ($o$)–(p) of the Complaint;

IV) Count III should be dismissed with respect to Defendant Advest for failure to state a claim upon which relief can be granted to the extent it incorporates

paragraph 49(a)–(m), (o)–(p) of the Complaint; and

V) Counts II and III should be dismissed (with leave to amend) for failure to comply with the "particularity" requirement of Fed.R.Civ.P. 9(b) to the extent they incorporate paragraph 49(q)–(t) of the Complaint.

## I. FACTS

In deciding a motion to dismiss for failure to state a claim,

factual allegations of the Complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be afforded under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader.

*D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

Defendant Craftmatic manufactures, markets and distributes the Craftmatic Adjustable Bed, "specifically designed for residential use which purports to have certain features found in hospital beds," and the Contour Chair Lounge, "which purports to be a custom-fitted reclining chair." Cplt.

paragraph 7(a). Craftmatic's stock has been traded publicly since March 5, 1986 ("Initial Public Offering"). Cplt. paragraph 7(c). Defendant Stanley Kraftsow served as Chairman of the Board of Directors, President, and Chief Operating Officer of Craftmatic during the class period. Cplt. par. 8. His wife, Defendant Carolyn Kraftsow, is a Director and Secretary of Craftmatic. Cplt. par. 9. Defendant Advest, Inc. is the securities brokerage and investment firm that served as the Company's investment banker, advisor, and the principal underwriter in Craftmatic's initial public offering.

The Plaintiff class is comprised of all persons who purchased Craftmatic common stock during the period March 5, 1986 through June 11, 1987 ("the class period"). In their Complaint, Plaintiffs purport to state three federal causes of action [1] and one state pendant claim [2], in essence, alleging that Defendants made certain injurious misrepresentations and omissions of material fact in connection with the initial public offering and subsequent trading of Craftmatic stock.

The thrust of Plaintiffs' complaint is laid out in paragraph 49 [3]. All but one of the

---

1. Count I alleges a violation of Section 11 of the Securities Act of 1933, 15 U.S.C. section 77k; Count II alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. section 78j(b), and SEC Rule 10b–5, 17 C.F.R. section 240.10b–5; and Count III alleges a violation of Section 12(2) of the Securities Act, 15 U.S.C. section 77l(2). In addition, Plaintiffs allege "controlling person" liability against Defendants Stanley and Carolyn Kraftsow under Section 15 of the Securities Act, 15 U.S.C. section 77o, with respect to the Securities Act claims, and Section 20(a) of the Exchange Act, 15 U.S.C. section 78t(a), with respect to the Section 10(b) claim.

2. Count IV alleges a claim of common law fraud and deceit.

3. "The practices and devices utilized by the defendants in order to effectuate the aforesaid conspiracy consisted of defendants' misrepresentations (in the name of Craftmatic), and failure to disclose omitted material facts which were necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiffs and the members of the Class. These misrepresentations and omissions, which are also acts of false advertising, were in whole or in part contained in, or omitted from, among other documents, the Company's Annual Report and each of its

Quarterly Reports to its shareholders issued during the Class Period, together with the registration statement and prospectus issued in connection with the foregoing initial public offering, and the news releases and other statements referred to above, which were prepared in the name of Craftmatic with the participation, acquiescence, cooperation, encouragement and assistance of each of the individual defendants and, as to the registration statement and prospectus, defendant Advest. All of these documents were materially false and misleading in that they:

(a) Failed to disclose that the success of Craftmatic's advertising and marketing program was dependent on unfair and deceptive sales practices in violation of consumer protection statutes, regulations, and other laws enforced by federal, state, and local agencies, which practices would and did result in serious charges being brought against Craftmatic and its being forced to pay substantial fines and restitution resulting in enormous ill will by consumers towards Craftmatic and its products;

(b) Failed to disclose that Craftmatic's 'independent' distribution network relied on advertising, marketing, or other promotional materials or techniques created for or developed by the Company that contained false and misleading information in violation of consumer pro-

allegations contained in this paragraph involve failures to disclose purported material information, not affirmative representations.

tection statutes, regulations, and other laws enforced by federal, state and local agencies;

(c) Failed to disclose that Craftmatic's advertising, marketing, or other promotional materials or techniques violated the consumer protection laws of federal, state and local governments, as well as the terms of various consent Orders and Assurances of Voluntary Compliance entered into between Craftmatic and federal and state governments;

(d) Failed to disclose that Craftmatic's rapid expansion program entailed an unusual and extremely high risk of failure, particularly in connection with its development of new product lines and its acquisition and/or resale of distributorships, and that, in embarking upon its abnormally speculative venture, the Company was essentially gambling with its profitability;

(e) Failed to disclose that Craftmatic's application of the advertising and marketing strategies of its core bed and chair business to new product lines entailed enormous costs that would far outstrip the revenues generated by the new product lines and hurt the Company's profitability;

(f) Failed to disclose that Craftmatic's internal studies, investigations, examinations or plans provided little or no meaningful information concerning the question of whether Craftmatic could profitably expand, particularly into new product lines, given the necessity to expend substantial financial resources in support of such expansion;

(g) Failed to disclose that in order to report increases in total net sales, Craftmatic required an ever increasing number of distributorships in uncertain marketing territories, as well as commensurate increases in promotional costs and expensive print and electronic media advertising expenditures, without which Craftmatic's total net sales would stagnate or decline;

(h) Failed to disclose that Craftmatic received an abnormally high level of customer complaints;

(i) Failed to disclose that Craftmatic was totally unfocused in that it tried to concentrate on more types of businesses than it had the ability and resources to efficiently manage, and that far from expanding its business, the company was unable to manage the businesses in which it was already involved;

(j) Failed to disclose that Craftmatic's costs and expenses, particularly those associated with advertising and marketing, were out of control and that the Company did not have adequate internal management controls and corporate wide cost control measures to monitor effectively the costs generated by Craftmatic's rapid expansion;

(k) Failed to disclose that Craftmatic was experiencing severe operational and organizational problems resulting from the absence of adequate or effective systems to control the expansion which had taken place both before and after its initial public offering, as well as the absence of financial reporting and accounting controls necessary to monitor or measure the current or future financial performance of the Company;

(l) Failed to disclose that Craftmatic's management information systems were wholly inadequate in providing timely and accurate information so as to permit management properly to forecast, control, and account for the Company's growing expenses, financial requirements, and overall financial performances;

(m) Failed to disclose that Craftmatic's rate of growth in its core bed and chair business was not sustainable;

(n) Misrepresented that Craftmatic's Contour Lounge was a 'custom-fitted' chair manufactured to customer specifications;

(o) Failed to disclose that the 'inquiries' of the States of Washington and Oregon as described in the April 16, 1987 preliminary prospectus were focused on Craftmatic, as well as Western Contour, and that its promotional, advertising, marketing or other sales tactics as well as that of Western Contour were being investigated;

(p) Failed to disclose that Craftmatic's water purification and security shutter product lines were not amenable to being marketed successfully by the in-home direct sales techniques that were developed for the Company's core bed and chair business;

(q) Failed to disclose that there was no reasonable basis for defendant Kraftsow's June 19, 1986 statement that, 'Our introduction of the two new product lines, water purification systems and security shutters during 1986, are expected to generate $14 million in revenues during 1987. This is an addition to the $53 million expected from our established products ...';

(r) Failed to disclose that there was no reasonable basis for defendant Kraftsow's statement in Craftmatic's 1986 Annual Report with respect to measures to control advertising costs that, 'We can already foresee substantial cost savings for our Company and our distributors';

(s) Failed to disclose that there was no reasonable basis for defendant Kraftsow's statement in Craftmatic's 1986 Annual Report that, 'We are very confident that before the close of Fiscal 1987 we shall demonstrate clearly the growth potential of American Aqua IV and our New York security shutters'; and

(t) Failed to disclose that there was no reasonable basis for defendant Kraftsow's statement in a company news release issued on or about March 18, 1987 that Craftmatic would achieve 'substantial profits' for the quarter ending March 31, 1987 and that 'the company's security shutter and water purification operations for the quarter ended December 31, 1986 could be expected to make a substantial contribution to earnings during the Company's third quarter ending September 30, 1987 (sic)'."

The Craftmatic Defendants group the specific averments contained in paragraph 49 into three categories: 1) those omissions that fail to predict difficulties that might be encountered in the future, *see* Cplt. paragraph 49(d)–(e), (g), (m), (p)–(t); 2) those that fail to disclose or characterize ineffective management, *see* Cplt. paragraph 49(a)–(c), (f)–(h), (h)–(*l*) [sic], (n); and 3) those that blur this distinction, see Cplt. paragraph 49(j)–(*l*).[4] Craftmatic Defendants' Memorandum in Support of Motion to Dismiss at 8.

## II. *PREDICTIVE FAILURES*

The Craftmatic Defendants contend that plaintiffs have attempted improperly to create a duty to predict *future* business activities and to convert garden variety claims of corporate mismanagement, which are more properly the subject of litigation under Delaware corporation law, into federal securities claims. Plaintiffs have alleged, in essence, that defendants failed to speculate or accurately predict their future difficulties, and to disclose their own alleged mismanagement. These claims, which transcend the boundaries of disclosure mandated by the federal securities laws, seek to impose liability based upon defendants' failure to peer into the future and predict the events which plaintiffs, with the benefits of perfect hindsight, now claim should have been disclosed.

Motion to Dismiss at 4.

The Craftmatic Defendants subdivide Plaintiffs claims for alleged predictive failures into two categories: those that involve failures to predict future developments, Cplt. paragraph 49(a), (d)–(e), (g), (m), (p), and those that involve the reasonableness of projections actually made, Cplt. paragraph 49(q)–(t).

4. Plaintiffs admit that paragraph 49(*o*) is "one of the only alleged nondisclosure [sic] in plaintiffs' complaint which may not be classified as either a failure to make and disclose accurate

### A. *Failure to Predict Future Developments*

The Consolidated Amended Complaint, in essence, alleges that certain documents failed to disclose that:

—Craftmatic's advertising and marketing program was based on deceptive and illegal sales practices which would and did result in charges and fines being levied against the company, paragraph 49(a);

—the company's expansion program entailed an unusual and extremely high risk of failure and that the company was gambling with its profitability, paragraph 49(d);

—the company's application of the advertising and marketing strategies of its core business to new product lines would hurt the company's profitability, paragraph 49(e);

—the company required an increasing number of distributorships in uncertain marketing territories and increases in promotional and advertising costs in order to increase sales, paragraph 49(g);

—the company's rate of growth in its core business was not sustainable, paragraph 49(m); and that

—the company's new products were not amenable to being marketed successfully by the same sales techniques developed for its core business, paragraph 49(p).

Each of these omissions involve the failure to predict future events.

Generally, companies are not required to make future-oriented projections, although they are now permitted to do so in some circumstances.

Until the early 1970's, the SEC prohibited companies from including most predictive information in the documents they filed with the SEC.... Courts generally recognized this policy and followed the SEC's lead by holding that failure to disclose predictive information was not actionable under the securities laws....

projections of future developments or a failure to disclose mismanagement." Plaintiffs' Memorandum at 8–9 n. 7.

In 1973, however, the SEC determined that 'changes in its present policies with regard to the use of projections would assist in the protection of investors and would be in the public interest.... In 1978 ... the SEC issued a statement encouraging, although not requiring, disclosures of management projections both in filings with the SEC and in general.... Because of the SEC's change in policy, courts have begun to re-examine the position that a company's decision not to disclose predictive information is always immune from scrutiny under the securities laws. As a result of these re-examinations, courts have adopted a variety of approaches to dealing with the problem of undisclosed predictions.

*Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 204–205 (5th Cir.), *cert. denied.* — U.S. ——, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988).

The Court of Appeals for the Third Circuit has adopted a case-by-case approach to determine when a duty exists to disclose certain "soft information." *Flynn v. Bass Brothers Enterprises, Inc.*, 744 F.2d 978, 988 (3d Cir.1984). In *Flynn,* the court rejected its earlier position, articulated in *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 265 (3d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d (1972), that " 'presentations of future earnings, appraised asset valuations and other hypothetical data' are to be discouraged."

> Henceforth, the law is not that asset appraisals are, as a matter of law, immaterial. Rather, in appropriate cases, such information must be disclosed. Courts should ascertain the duty to disclose asset valuations and other soft information on a case by case basis, by weighing the potential aid such information will give a shareholder against the potential harm, such as undue reliance, if the information in released with a proper cautionary note.

*Id.* at 988.

Although the Court of Appeals concluded that all "soft information" should no longer automatically be considered immaterial, it upheld the District Court's determination in

*Flynn* that certain asset appraisals were immaterial and that the nondisclosure of those appraisals during a tender offer did not violate the federal securities laws. Although the District Court decision was rendered after trial, the reasoning of *Flynn* is not inapposite in this case where the court is being asked to dismiss certain claims before trial.

■ The predictive omissions outlined in paragraph 49(a), (d)–(e), (g), (m), (p) would have been highly speculative and would have provided only minimal aid—if any—to prospective shareholders. Consequently, I conclude that these specific nondisclosures are immaterial as a matter of law. To hold otherwise would result in an explosion of federal securities litigation: every company whose performance did not live up to the expectations of a single purchaser would be at risk of being haled into court to defend against a potentially lengthy and expensive securities suit.

The thrust of Plaintiffs' theory is contained in this sentence: "Having loudly promoted their products and marketing efficiencies in press releases, public documents and other public statements, defendants were required to disclose the *complete* truth about the serious problems Craftmatic was facing in connection with those areas of its business." Plaintiff's Memorandum at 44. The "complete truth" relevant for Counts I–III, however, is the "truth" *known at the time the various documents were filed,* not the "truth" gleaned through hindsight. Consequently, having determined that the alleged omissions are immaterial as a matter of law, I conclude that paragraph 49(a), (d)–(e), (g), (m), (p) of the complaint cannot form the basis of the claims outlined in Counts I–III.

### B. *Reasonableness of Projections Actually Made*

The second subcategory of alleged predictive failures—as outlined by the Craftmatic Defendants—deals with the reasonableness of certain projections they actually made. Cplt. paragraph 49(q)–(t). I need not reach the merits of Defendants' substantive arguments, however, since I con-

clude that paragraph 49(q)–(t) fails to satisfy the "particularity" requirement of Fed. R.Civ.P. 9(b).

### III. *PLEADING REQUIREMENTS OF FED.R.CIV.P. 9(b)*

■ The Craftmatic Defendants contend that Plaintiffs have not properly asserted their claims challenging erroneous projections under Fed.R.Civ.P. 9(b). That rule provides in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Reconciling Rule 9(b) with the liberal tone of the pleading rules, *see* Fed.R.Civ.P. 8(a), is not an easy task. "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir.), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1984). "Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." 5 C. Wright & K. Graham, Federal Practice and Procedure [section] 5023 (1987).

Each of the averments listed in paragraph 49(q)–(t) of the Complaint alleges that certain documents "[f]ailed to disclose that there was no reasonable basis" for several public statements made by Defendant Stanley Kraftsow. Although paragraphs 6–48 describe in some detail the circumstances surrounding the Company's initial success, expansion, mismanagement and eventual failure, these averments do little to put Defendants on notice of *how* they committed the alleged fraud.

Plaintiffs do not allege an active fraud. Rather, they allege a fraudulent omission. The particular omission—failure to disclose a lack of a reasonable basis for certain statements—must be alleged more specifically than has been done here, if only to permit Defendants to respond. Although Rule 9(b) requires the pleading of "circumstances" and not "facts,"

> [t]he pleader is generally required to allege the time, place and content of the alleged fraudulent representations or transactions. [Footnote omitted.] The pleader must identify omissions or misrepresentations in particular statements or documents and *indicate why they rendered the statements or documents misleading.* [Footnote omitted.]

2A J. Moore and J. Lucas, Moore's Federal Practice [section] 9.03 (2d ed. 1987) [emphasis added].

In *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96 (3d Cir.1983), the Third Circuit warned courts not to focus "exclusively on [Rule 9(b)'s] 'particularity' 'language'" since that approach would be "too narrow" and fail "to take account of the general simplicity and flexibility contemplated by the rules." *Id.* at 100. Nevertheless, the Court of Appeals still affirmed the district court's dismissal of a complaint alleging fraudulent accounting practices.

> In this instance ... no matter how flexibly we apply the first sentence of Rule 9(b), it requires that we affirm the dismissal of the complaint. Its defect is the complete absence of any disclosure of the *manner in which*, in establishing reserves for bad debts in the financial statements relied upon, the defendants knowingly departed from reasonable accounting practices. Those reserves were estimates or predictions of the likely collection or liquidation experience of the Trust in the future. They could be fraudulent only if, when they were established, the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable account practices. What those practices are and how they were departed from is nowhere set forth.

*Id.* at 100 [emphasis added].

Likewise, Plaintiffs in the instant case fail to explain *why* there was "no reasonable basis" for making the statements at

issue. Plaintiffs incorrectly argue that since they "have set out *verbatim* the exact projections that they claim were unreasonably made, and have identified when and where the statements were made ... [t]here could be nothing more specific to say about these projections." Memorandum at 35–36. Plaintiffs, however, *could* explain *why* the projections were *unreasonably* made—*why* there was no reasonable bases for the $14 million revenue prediction, Cplt, paragraph 49(q); the forecast of substantial advertising cost savings, Cplt., paragraph 49(r); and the prediction of growth in the water filter and security shutter markets, Cplt., paragraph 49(s)–(r). Plaintiffs provide no numerical calculations, describe no methods of computation, cite nothing more than the good-turned-bad performance of the company. Indeed, each averment of fraud is mere suspicion; and suspicion alone does not satisfy Rule 9(b). Consequently, I conclude that paragraph 49(q)–(t) of the amended complaint does not satisfy the "particularity" requirement of Fed.R.Civ.P. 9(b). Counts II and III are therefore dismissed to the extent that they incorporate paragraph 49(q)–(t). Leave to amend is granted.

## IV. *FAILURE TO DISCLOSE INEFFECTIVE MANAGEMENT*

■ The next Craftmatic category of alleged omissions is that which fails to disclose ineffective management. The specific subparagraphs falling into this category essentially provide that various documents failed to disclose that:

—the company's advertising and marketing program was dependent on unfair, deceptive, and illegal sales practices which would and did result in the company's payment of substantial fines and restitution and enormous ill will by consumers toward the company, paragraph 49(a);

—the company's distribution network relied on techniques or materials containing false and misleading information in violation of various statutes, paragraph 49(b);

—the company's advertising, marketing and promotional materials and techniques violated various laws as well as the terms of various Consent Orders and Assurances of Voluntary Compliance, paragraph 49(c);

—the Company's investigations and studies provided little or no meaningful information concerning whether the company could profitably expand, particularly into new product lines, paragraph 49(f);

—the company had an abnormally high level of customer complaints, paragraph 49(h);

—the company concentrated on more business than it could manage, paragraph 49(i);

—the company's expenses were out of control and it did not have internal management controls and cost control measures, paragraph 49(j);

—the company was experiencing operational and organizational problems resulting from ineffective expansion control systems and the absence of financial reporting and accounting controls, paragraph 49(k); and

—the company's management information systems were inadequate, paragraph 49(*l*).

Furthermore, Plaintiffs allege that Defendants "misrepresented that Craftmatic's Contour Lounge was a 'custom-fitted' chair manufactured to customer specifications." Cplt. paragraph 49(n).

Defendants contend that these averments fail to state a claim in light of the Supreme Court's holding in *Santa Fe v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), that a simple breach of fiduciary duty is not actionable under section 10(b) of the Securities Act in the absence of some deception, misrepresentation or nondisclosure. *Id.*, 430 U.S. at 475–77, 97 S.Ct. at 1301–02. One member of this court explained the effect of *Santa Fe:* "No longer can the catch-all antifraud provision be used to redress claims of corporate mismanagement." *In Re Catanella and E.F. Hutton and Co.*, 583 F.Supp. 1388, 1403 (E.D.Pa.1984).

Plaintiffs insist, however, that by alleging the failure to disclose material information "about Craftmatic's business, operations and business prospects," Plaintiffs' Memorandum at 20–21, they state more than a simple claim for mismanagement. I disagree. Plaintiffs are attempting to bootstrap their mismanagement claims into federal court through the use of creative pleadings. As one district court explained:

> From *Santa Fe* must come the notion that where as here the central thrust of a claim or series of claims arises from acts of corporate mismanagement, claims are not cognizable under federal law. To hold otherwise would be to eviscerate the obvious purpose of the *Santa Fe* decision, and to permit evasion of that decision by artful legal draftsmanship. The plaintiffs here have, with undeniable skill, woven a complex series of acts of mismanagement into a fabric that appears to reflect a scheme of corporate deception. Yet the fabric is nonetheless woven from the thread of corporate mismanagement.

*Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349 at 1365–66 (N.D.Tex.1979), *cited approvingly in Panter v. Marshall Field & Co.*, 646 F.2d 271, 289 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

Language of Court of Appeals for the Seventh Circuit is also pertinent:

> In the wake of *Santa Fe*, courts have consistently held that since a shareholder cannot recover under 10b–5 for a breach of fiduciary duty, neither can he 'bootstrap' such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transactions.

*Panter v. Marshall Field & Co.*, 646 F.2d at 288. For the foregoing reasons, I conclude that Counts I–III fail to state a claim upon which relief can be granted to the extent they incorporate by reference paragraphs 49(a)–(c), (f), (h)–(n).[5] Furthermore, since Count I incorporates by reference and realleges only subparagraphs 49(a)–(n), none of which can form the basis of a Section 11 claim, *see* sections II and IV of this Opinion, *supra*, Count I should be dismissed in its entirety with respect to all defendants.

### V. "SELLER" PROVISION OF SECTION 12(2)

■ The Craftmatic Defendants next argue that Count III fails to state a claim against them since: 1) only the *immediate* seller of securities is liable to the purchaser; and 2) "the terms of [a] ... firm underwriting agreement resulted in title to the Craftmatic shares passing from Craftmatic and Stanley Kraftsow to Advest and its fellow underwriters *prior* to the resale of that stock to the public." Craftmatic Defendants' Reply Memorandum at 27. All parties agree that the most recent Third Circuit opinion discussing the scope of liability under Section 12(2) limits actionable claims for primary liability by a purchaser of a security under Section 12(2) to those against his *immediate* seller.

> We have no difficulty in concluding that Congress intended the unambiguous language of [section] 12(2) to mean exactly what it says: 'Any person who ... (2) offers or sells a security ... shall be liable to the person purchasing from him....' This section is designed as a vehicle for a purchaser to claim against his immediate seller. Any broader interpretation would not only torture the plain meaning of the statutory language but

**5.** The Craftmatic Defendants contend that the allegation in paragraph 49(*o*) of the complaint are "legally insufficient ... [because Plaintiffs have not alleged] that they purchased or sold their stock in reliance upon the alleged misrepresentation or omission." *Id.* In my opinion, however, Plaintiffs adequately state a 10b–5 claim based on the "fraud on the market" theory, *see Basic, Inc. v. Levinson*, —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), in paragraph 62 of the complaint:

> As a result of the foregoing, the market price of Craftmatic common stock was artificially [sic] inflated during the Class Period. In ignorance of the false and misleading nature of the representations described above, plaintiffs and other members of the Class relied to their damage on the integrity of the market.

would also frustrate the statutory schema because Congress has also provided a specified remedy for a purchaser to utilize against the issuer as distinguished from the seller of a security. Thus, [section] 11 gives anyone acquiring a security a specific right of action for misrepresentations against every person who signed the registration statement, or was a director or partner of the issuer, or prepared a certified statement contained in the registration statement, or was an underwriter with respect to the security. 15 U.S.C. [section] 77k.

*Collins v. Signetics Corp.,* 605 F.2d 110, 113 (3d Cir.1979).

Plaintiffs assert that a recent Supreme Court decision, *Pinter v. Dahl,* 486 U.S. ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), explicitly rejected the direct privity requirement of *Collins.* *Pinter,* however, is not as sweeping as Plaintiffs allege, since its holding is specifically limited to Section 12(1) of the Securities Act, not the section at issue here: "this case does not present, nor do we take a position on, the scope of a statutory seller for the purposes of [section] 12(2)." *Pinter,* at ——, 108 S.Ct. at 2076, 100 L.Ed.2d at 679 n. 20. Consequently, even though the Court *may* have raised some questions as to the continued vitality of the *Collins* holding, I am bound to follow the law as it now stands in this Circuit. That law, articulated in *Collins,* precludes any liability in this case on behalf of the Craftmatic Defendants under Section 12(2).[6]

An appropriate order follows.

## ORDER

AND NOW, this 13th day of January, 1989, upon consideration of Defendants'

motions and Plaintiffs' response thereto, it is hereby

## ORDERED

that:

I) Count I is DISMISSED with respect to all defendants for failure to state a claim upon which relief can be granted;

II) Count III is DISMISSED with respect to the Craftmatic Defendants for failure to state a claim upon which relief can be granted;

III) Count II is DISMISSED with respect to the Craftmatic Defendants for failure to state a claim upon which relief can be granted to the extent it incorporates paragraph 49(a)–(n), (p) of the Complaint;

IV) Count III is DISMISSED with respect to Defendant Advest for failure to state a claim upon which relief can be granted to the extent it incorporates paragraph 49(a)–(n), (p) of the Complaint;

V) Counts II and III are DISMISSED (with leave to amend) for failure to comply with the "particularity" requirement of Fed.R.Civ.P. 9(b) to the extent they incorporate paragraph 49(q)–(t) of the Complaint; and

VI) Defendants' Motion to Dismiss Count III for lack of subject matter jurisdiction is DENIED.

6. Plaintiffs also contend that they have adequately stated a Section 12(2) claim based on "aiding and abetting" liability. However,

the language of *Pinter* and *Collins,* the text of the statute itself, and the existence of other provisions provided by Congress for redress against issuers such as section 10b of the 1934 Act or section 11 of the 1933 Act, persuade [me] that a claim for aiding and abetting a violator of section 12(2) should not be allowed. Other courts have reached the same conclusion. *Harrison v. Enventure Capital*

*Group, Inc.,* 666 F.Supp. 473, 476 (W.D.N.Y. 1987); *Frymire v. Peat, Marwick Mitchell & Co.,* 657 F.Supp. 889, 892 (N.D.Ill.1987); *Hokama v. E.F. Hutton & Co.,* 566 F.Supp. 636, 640–42 (C.D.Cal.1983); *Benoay v. Decker,* 517 F.Supp. 490, 494 (E.D.Mich.1981) *aff'd.* 735 F.2d 1363 (6th Cir.1984); *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1033–34 (D.Min.1981).

*Laven v. Flanagan,* 695 F.Supp. 800 (D.N.J. 1988).